IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Randolph Ashford,<br><br>Plaintiff,<br><br>v.<br><br>Angela Gordon; Kelvin Myers; Kisha Linnen; Kelvin Williams; George J. Amonitti, *all in their individual capacities*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A No. 0:13-1113-JFA-PJG<br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Randolph Ashford ("Ashford"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motions for summary judgment. (ECF Nos. 113 & 116.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Ashford was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF Nos. 114 & 118.) Ashford filed responses in opposition (ECF Nos. 125 & 128), and the defendants replied (ECF Nos. 127 & 134).[1] Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motions should be granted.

[1] Ashford also filed a sur-reply. (ECF No. 140.) The court observes that the Local Rules make no provision for sur-replies. Further, under Local Civil Rule 7.07 DSC, "[r]eplies to responses are discouraged." However, even considering Ashford's sur-reply, it does not change the court's analysis of the legal issues and its recommendation to grant summary judgment.





## BACKGROUND

Ashford's Complaint asserts claims pursuant to 42 U.S.C. § 1983 alleging excessive force and deliberate indifference to medical needs. The Complaint alleges that Defendants Gordon and Myers assaulted Ashford on May 11, 2011, and that Defendants Williams, Linnen, and Amonitti thereafter denied or delayed medical treatment.

The following facts are taken in the light most favorable to Ashford. Specifically, Ashford alleges that on May 11, 2011, he requested forms from Defendant Gordon, who instructed him to wait. When Ashford asked again a short time later, Gordon yelled and cursed at him and told him to go back to his room. Ashford then left and went to the recreation field, where he later encountered Gordon for a third time. According to Ashford, Gordon stated, "I told you to wait a minute, go back to the dorm," and then called for Defendant Myers, who was also in the recreation yard, to escort Ashford to his cell.

Gordon and Myers escorted Ashford to his cell. Ashford, who was unrestrained, alleges that as he opened the unlocked cell door and while his back was to the officers, Gordon screamed that Ashford was trying to hit her with the door. Myers responded by allegedly hitting Ashford in the back of his head and neck while wearing "an exceptional[ly] large ring on his finger" and pushing Ashford face first into the bed. Ashford alleges that he cut his lip on the iron bed frame. He also alleges that while Myers continued to beat him, Gordon came into the room, gave Myers her canister of chemical munitions, and directed Myers to spray Ashford. Ashford alleges that Myers sprayed Ashford in the face with the entire canister of chemical munitions and then began hitting Ashford with the canister, and Ashford alleges that he attempted to block the blows with his left arm. Myers





purportedly then dropped the canister and ran out of the room while instructing Gordon to lock the door, leaving the chemical munitions canister in the cell with Ashford.

A short time later, and after speaking with Defendant Williams, Major Nettles, Warden McCabe, and Lt. Lawrence about the incident, Ashford requested medical care. Williams put Ashford in a holding cell and later removed him from the holding cell and took Ashford to the medical department. Ashford was instructed by Defendant Nurse Linnen to wash his face and rinse his eyes, was examined by Nurse Linnen, and then was examined by Defendant Dr. Amonitti. Ashford alleges that Dr. Amonitti ignored him when Ashford tried to show him the large knot on the back of his head. Ashford alleges he requested pain medication and an ice-pack from Nurse Linnen, but that Williams instructed Nurse Linnen not to give Ashford anything for his injuries because Ashford had not told him the location of the missing chemical munitions canister.

**DISCUSSION**

**A. Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).





In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B. Defendants' Motions for Summary Judgment**

**1. Exhaustion of Administrative Remedies**

In this case, the defendants argue that Ashford has failed to exhaust his administrative remedies with regard to his claims. A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of





this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC") is generally part of the available administrative



PJG

remedies an inmate must exhaust.[2] See Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)); (see also SCDC Policy § 13.9, ECF No. 113-9 at 9). The Administrative Law Court is a statutorily created hybrid. Its enabling legislation provides that the Administrative Law Court is both a court of record and an executive branch agency. See S.C. Code Ann. § 1-23-500 (stating that the Administrative Law Court "is an agency and a court of record within the executive branch of the government of this State"). Thus, Administrative Law Court is unquestionably part of the executive, not judicial, branch of state government. As such, it provides an administrative—not judicial—remedy. Thus, the Administrative Law Court is part of the available *administrative* remedies that an inmate must exhaust. See 42 U.S.C. § 1997e(a) (requiring a prisoner to exhaust "such administrative remedies as are available").

The defendants argue that while Ashford filed Step 1 and Step 2 grievances with regard to his claims, he failed to appeal any grievance to the Administrative Law Court. In response to the defendants' assertions, Ashford has provided evidence to the court that he has appealed at least one set of grievances to the Administrative Law Court regarding medical care; however these grievances did not contain any allegations against the defendants named in this matter. Accordingly, it does not

---

[2] South Carolina case law has established certain exceptions not applicable here. See Howard v. S.C. Dep't of Corr., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the ALC lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the ALC is without jurisdiction to hear facial challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); Howard, 399 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies).



PJG

appear that Ashford appealed the grievances regarding the claims raised in the instant Complaint to the Administrative Law Court. However, even if Ashford were to have properly exhausted his administrative remedies, the defendants are nonetheless entitled to summary judgment for the reasons stated below.

**2. Eighth Amendment—Excessive Force**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Ashford must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The " 'core judicial inquiry' " in an excessive force claim under the Eighth Amendment is " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, " '[w]hen prison officials maliciously and sadistically use force to cause harm,' . . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting





less than some arbitrary quantity of injury.' " Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984). In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the Bailey Court held that prison officials may use mace to compel the



PJG

obedience of a recalcitrant prisoner. Bailey, 736 F.2d at 969-70. The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. Id. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks & citation omitted).

As described above, Ashford alleges that Defendants Gordon and Myers used excessive force when escorting Ashford back to cell in spite of Ashford's allegations that he had done nothing wrong. In support of their summary judgment motion, the defendants have provided incident reports from Gordon and Myers, as well as affidavit testimony from Gordon, Defendant Williams, and Director of the Division of Security Colie L. Rushton. The incident reports and Gordon's affidavit indicate that Ashford repeatedly failed to obey directives from Gordon and Myers, that Ashford attempted to swing the cell door into Gordon, and that Myers then used force to get Ashford into the cell. (Gordon Incident Report, ECF No. 113-3; Myers Incident Report, ECF No. 113-4; Gordon Aff. ¶¶ 6, 8-12, ECF No. 113-2 at 3-4.) Specifically, the incident reports indicate and Gordon avers that Myers instructed Ashford to stop acting aggressively, that Ashford continued to be uncooperative and was thrashing around and attempting to strike Myers with his fists, that Myers attempted a brachial stun strike to the back of Ashford's neck that was ineffective, and that Myers then used





Gordon's munitions canister to administer approximately fifteen grams of chemical munitions. (Id.) Gordon also avers that, "[d]ue to the struggle, Sgt. Myers was not able to aim properly, and the majority of the pepper spray actually struck Sgt. Myers instead of Inmate Ashford." (Gordon Aff. ¶ 11, ECF No. 113-2 at 4.) Gordon attests that she was able to remove Myers from Ashford's cell and secure the door to Ashford's cell, leaving her munitions canister in Ashford's cell. (Id. ¶ 12.) Rushton's affidavit testimony also supports the defendants' motion for summary judgment at to the use of force. Specifically, Rushton attests that SCDC's Use of Force Policy OP-22.01 ensures that officers are "trained on an appropriate level of force to be used as a response to inmate aggression or resistance in any given situation." (Rushton Aff. ¶ 6, ECF No. 113-8 at 3-4.) Rushton also avers that the Use of Force Continuum—part of Policy OP-22.01—designates inmate resistance levels as well as levels of officer control to be used in response to inmate resistance. (Id. ¶¶ 7-8, ECF No. 113-8 at 4.) According to Rushton, the incident reports completed by Defendants Gordon and Myers indicate "an inmate who exhibited psychological attempts to intimidate and verbal non-compliance before skipping several levels of resistance and proceeding directly to inmate aggression" and that "[u]nder the circumstances, the force used by Officer Myers in responding to the inmate's active aggression on May 11, 2011 was justified and entirely with the guidelines promulgated by SCDC." (Id. ¶¶ 11-12, ECF No. 113-8 at 4-5.)

In response to the defendants' motion, Ashford argues that Gordon and Williams's affidavits were submitted in bad faith, and appears to focus his argument on his allegation that Gordon, Myers, and Williams conspired to incorrectly report the amount of chemical munitions used in the May 11, 2011 incident. In support of his argument, Ashford relies on an SCDC Security Equipment Issuance Log showing that gas canister #20 was issued to Gordon on May 11, 2011 with 67 grams of chemical





munitions. (ECF No. 125-6 at 2.) Although the canister was signed for as "received" and Gordon's signature indicates she returned the canister, Ashford points out that the box indicating the amount of chemical munitions in the canister when it was returned was left blank. This, he appears to argue, supports his allegation that Myers used excessive force by spraying the entire contents of the mace canister in his face.

In response to Ashford's argument, the defendants rely on affidavit testimony provided by Defendant Williams and Defendant Gordon, as well as additional SCDC Security Equipment Issuance Logs from May 12 and 13, 2011. Specifically, the defendants argue that the affidavit testimony and the incident reports are consistent in stating that the canister was found to weigh 52 grams after it was recovered and returned. Moreover, they point out that the equipment logs show that canister #20 was not issued the following date (May 12, 2011) but had a listed weight of 53 grams. (ECF No. 127-1 at 3.) Additionally, the defendants argue that Ashford's allegations also fail due to the fact that Ashford admits that he was in sole control of the canister for a period of time prior to its recovery. (See Pl.'s Resp. Opp'n Mot. Summ. J, ECF No. 125-1 at 6.)

Applying the Whitley factors to the facts viewed in the light most favorable to Ashford, the court concludes that the amount of force used was not constitutionally excessive. Importantly, Ashford acknowledges that he did not return to his room as Gordon had directed, that he was unrestrained at the time of the incident, that he heard Gordon state that Ashford was trying to hit her with the cell door, and that Ashford raised he arm purportedly to block the blows from Myers. Thus, even viewing the facts that are disputed in the light most favorable to Ashford, no reasonable jury could find that Gordon and Myers's perception of Ashford's behavior was unreasonable. See Whitley, 475 U.S. at 321-322.





Additionally, although Ashford alleges that he continues to suffer head and neck injuries and blurred vision as a result of this incident, the court observes that the medical records show that Ashford was seen by medical personnel following the incident, where he was observed to have "no active bleeding." (Med. Records, ECF No. 125-7 at 30.) During a follow-up appointment on May 27, 2011, the nurse was unable to see or feel the knot that Ashford complained of on the back of his head, and noted that Ashford's neck was supple with "no signs of trauma." (Id. at 29-30.) Ashford was given pain medication. (Id.) During an August 5, 2011 appointment with Dr. Amonitti, the doctor noted that Ashford appeared to have some limitation of rotation of his neck, but was unsure if Ashford was malingering. (Id. at 28-29.) At Ashford's request, Dr. Amonitti ordered an x-ray of Ashford's neck. (Id.) Ashford's cervical spine x-ray was normal. (Id. at 27.) The medical records also show that over a year later, Ashford was prescribed glasses for his blurred vision following an eye exam. (Id. at 15-16.) This encounter also notes that Ashford had had non-prescribed reading glass prior to incarceration.

Applying the Whitley factors and considering the extent of Ashford's alleged injuries, the court concludes that Ashford has failed to present evidence from which a reasonable jury could find that the defendants' actions showed "wantonness in the infliction of pain." See Whitley, 475 U.S. at 322; see also Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir.1998) (holding that "[w]hen evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain") (internal quotations omitted). The court concludes that based on the facts not disputed by Ashford, no reasonable jury could find that the use of force was not a good faith effort



PJG

to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 130 S. Ct. at 1178; see also Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

**3. Deliberate Indifference—Medical Treatment**

The standard for deliberate indifference, requiring an inmate to establish that a sufficiently serious deprivation occurred and that the prison official had a sufficiently culpable state of mind, also applies to medical indifference claims under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to





determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal.2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

As described above, Ashford alleges that he was delayed or denied medical care following the May 11, 2011 incident. Specifically, he alleges that Defendant Williams instructed Nurse Linnen not to give Ashford any pain medication or an ice-pack because Ashford allegedly would not tell Williams where the missing MK-4 canister was located, and that Nurse Linnen complied. Ashford also complains that Dr. Amonitti did not fully examine his injuries. Ashford further appears to allege that he did not timely receive requested follow-up treatment.

In support of their motion for summary judgment, the defendants have provided affidavit testimony from Defendants Williams and Amonitti, as well as Ashford's medical records. In his affidavit, Williams avers that following the incident with Gordon and Myers, Ashford did not appear to be in serious distress but requested to be seen at the infirmary. (Williams Aff. ¶ 8, ECF No. 113-5 at 3.) Williams further avers that he escorted Ashford to the holding cell where Nurse Linnen performed an initial examination. (Id.) The medical records show that, during this initial examination, Linnen noted that Ashford was in no acute distress, that Ashford was able to move his extremities within normal limits, and that no active bleeding was observed. (ECF No. 116-5 at 29.)



PJG

Linnen advised Ashford to wash his eyes and face with cool water. (Id.) Ashford was then brought to the medical department where he was examined by Dr. Amonitti. (Id.; Williams Aff. ¶ 8, ECF No. 113-5 at 3.) Amonitti avers that at the time of his evaluation, Ashford complained of breathing difficulties. (Amonitti Aff. ¶ 6, ECF No. 116-6 at 2.) Amonitti avers, and the medical records indicate, that Ashford showed no signs of gasping for breath and that Ashford would not cooperate in taking a deep breath so that Amonitti could fully assess Ashford's lungs. (Id.; Med. Records, ECF No. 116-5 at 29.) Amonitti instructed Ashford that if he was still having breathing problems after a few hours, that Amonitti would consider a chest x-ray; however Ashford did not return to the medical department or request a chest x-ray. In his affidavit and as discussed above, the medical records show that Ashford was seen by medical personnel following the incident, where he was observed to have "no active bleeding." (Amonitti Aff. ¶ 7, ECF No. 116-6 at 2.) During a follow-up appointment on May 27, 2011, the nurse was unable to see or feel the knot that Ashford complained of on the back of his head, and noted that Ashford's neck was supple with "no signs of trauma." (Med. Records, ECF No. 116-5 at 28-29.) Ashford was given pain medication. (Id.) During an August 5, 2011 appointment with Dr. Amonitti, the doctor noted that Ashford appeared to have some limitation of rotation of his neck, but was unsure if Ashford was malingering. (Id. at 27-28; Amonitti Aff. ¶ 10, ECF No. 116-6 at 2-3.) At Ashford's request, Dr. Amonitti ordered an x-ray of Ashford's neck. (Id.) Ashford's cervical spine x-ray was normal. (Amonitti Aff. ¶ 11, ECF No. 116-6 at 3; Med. Records, ECF No. 116-7.) Amonitti avers that, based upon his physical examination of Ashford and Ashford's cervical x-ray, Amonitti concluded that Ashford had not sustained a neck injury and that his claims were without merit. (Amonitti Aff. ¶ 11, ECF No. 116-6 at 3.)



PJG

On this record, Ashford's claim of deliberate indifference to a serious medical need fails because the record unequivocally shows that Ashford was repeatedly seen and treated by medical staff for his complaints. Moreover, as stated above, Ashford does not have a claim against the defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Ashford's claims allege negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

**4. Other Claims**

To the extent Ashford is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

**RECOMMENDATION**

For the above reasons, the court recommends that the defendants' motions for summary judgment be granted. (ECF Nos. 113 & 116.) In light of this recommendation, Ashford's motions to compel, to seize property, for a hearing, for subpoenas and for appointment of counsel should be denied. (ECF Nos. 70, 72, 89, 92, 95, 96, & 98.)

June 26, 2014
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).